# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-cv-24092-RNS

STEVEN KERZER,

    Plaintiff,

vs.

SANOFI-AVENTIS U.S. LLC, SANOFI US
SERVICES INC., SANOFI S.A., CHATTEM,
INC., and BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC.,

    Defendants.

_____/

## DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants Sanofi-Aventis U.S. LLC, Sanofi US Services Inc., and Chattem, Inc. (collectively, "Sanofi") and Defendant Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI"), by and through undersigned counsel, file this Joint Motion to Dismiss Plaintiff's Complaint and, in furtherance thereof, state as follows:

### INTRODUCTION

In his rush to the courthouse—filing his Complaint just a few weeks after the U.S. Food and Drug Administration ("FDA") announced that it was investigating a citizen petition's claims that the medication Zantac may contain a carcinogen—Plaintiff failed to establish the factual foundation needed to satisfy basic pleading requirements. Instead, his Complaint just parrots the claims in the citizen petition, all of which are still under scrutiny by FDA, and then pleads in blunderbuss fashion that Defendants are liable under vaguely articulated legal theories.

As a result, Plaintiff's Complaint is deficient on numerous grounds.  *First*, Plaintiff impermissibly lumps together his allegations throughout the Complaint against all Defendants and, with respect to his negligence claim, merely alleges a laundry list of potential theories of liability without specifying the theory on which he actually relies.  This shotgun pleading style violates Federal Rule of Civil Procedure 8, as it fails to give Defendants adequate notice of the claims against them.  *Second*, Plaintiff fails to state his negligent misrepresentation claim—a claim sounding in fraud—with sufficient particularity to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  *Third*, Plaintiff's breach of warranty claims fail because he lacks privity, has not provided pre-suit notice, and has not alleged the required elements of his claims.  Further, Plaintiff seeks punitive damages for the alleged breaches, which are not recoverable under Florida law.  *Finally*, Plaintiff provides no basis in statute or contract to support his request for attorneys' fees in connection with his strict liability design defect claim. Accordingly, Defendants move to dismiss all causes of action in Plaintiff's Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

FDA first approved ranitidine in 1983, and the drug has been used for decades to treat gastric ulcers, heartburn, and other conditions of the stomach and esophagus.  *See* Compl. ¶ 15.[1]

---

[1] Defendants cite to the allegations in the Complaint for the purposes of this Motion to Dismiss, but do not concede that Plaintiff's allegations are true for any other purpose. With respect to the FDA approval history of Zantac, *see also, e.g.*, Drugs@FDA:  FDA Approved Drug Products, New Drug Application 01965 https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm?event=BasicSearch.process, search Zantac (providing the approval dates and labels for the medication).  "A district court may take judicial notice of certain facts without converting a motion to dismiss into a motion for summary judgement," in particular "public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned.'"  *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010 (quoting Fed. R. Evid. 201(b)); *see also, e.g.*, *Markland v. Insys Therapeutics, Inc.*, 270 F. Supp. 3d 1318, 1321 n.3 (M.D. Fla. 2017) (considering FDA records available to the public on FDA's website on a motion to dismiss); *Leroy v. Medtronic, Inc.*, No.

The World Health Organization's List of Essential Medicines, a selection of drugs the global organization has determined are "the most efficacious, safe and cost–effective medicines for priority conditions," lists ranitidine as an antiulcer medicine.[2] Zantac is the brand name for ranitidine, and the Complaint alleges that Defendants are current or past manufacturers of the drug. *Id.* ¶¶ 7, 9.

On September 13, 2019, Valisure, LLC, an online pharmacy, submitted a citizen petition to FDA suggesting a potential link between ranitidine and N-Nitrosodimethylamine ("NDMA"), a substance deemed possibly carcinogenic in humans. *Id.* ¶¶ 32-34, Ex. A. The Valisure petition describes certain tests Valisure claims to have undertaken to investigate whether ranitidine contains, or can generate, NDMA under various conditions. *Id.* Plaintiff filed his Complaint, alleging that Zantac caused him to contract kidney cancer, on October 3, 2019, just three weeks after Valisure filed its petition with FDA. DE No. 1.

In response to Valisure's citizen petition, FDA is in the midst of evaluating the claims about NDMA levels in Zantac. *Id.*[3] Rather than relying on Valisure's methods, FDA is conducting its own testing to "evaluat[e] whether the low levels of NDMA in ranitidine pose a risk to patients."[4] In its most recent update, FDA announced that while its testing continues, it had "found

---

3:14-cv-284/MCR/CJK, 2015 WL 4600880, at *6 (N.D. Fla. July 29, 2015) (taking judicial notice of FDA press release on the agency's website).

[2] World Health Organization Model List of Essential Medicines (2019), https://apps.who.int/iris/bitstream/handle/10665/325771/WHO-MVP-EMP-IAU-2019.06-eng.pdf?ua=1.

[3] U.S. Food & Drug Admin., FDA provides update on testing of ranitidine for NDMA impurities (Oct. 2, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine.

[4] U.S. Food & Drug Admin., Statement alerting patients and health care professionals of NDMA found in samples of ranitidine (Sept. 13, 2019), https://www.fda.gov/news-events/press-

levels of NDMA in ranitidine that are similar to the levels you would expect to be exposed to if you ate common foods like grilled or smoked meats."[5] FDA also announced that it had "conducted tests that simulate what happens to ranitidine after it has been exposed to acid in the stomach with a normal diet and results of these tests indicate that NDMA is not formed through this process." *Id.*

Plaintiff's Complaint largely just cribs from the citizen's petition, and then broadly claims that all Defendants should be liable to Plaintiff without directing specific allegations against Sanofi or BIPI individually. On the basis of these undifferentiated allegations, Plaintiff pursues causes of action for strict liability design defect, strict liability failure to warn, negligence, breach of express and implied warranties, and negligent misrepresentation against all Defendants. As discussed below, all of Plaintiff's claims should be dismissed.

## LEGAL STANDARD

A motion to dismiss challenges the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss, courts must accept as true the complaint's well-pleaded factual allegations but not its legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of the cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555); *see also GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254

---

announcements/statement-alerting-patients-and-health-care-professionals-ndma-found-samples-ranitidine.

[5] U.S. Food & Drug Admin., Statement on new testing results, including low levels of impurities in ranitidine drugs (Nov. 1, 2019), https://www.fda.gov/news-events/press-announcements/statement-new-testing-results-including-low-levels-impurities-ranitidine-drugs.

4

(11th Cir. 2012) (*Iqbal* "necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim"). When "'alleging fraud or mistake, a party must state particularity the circumstances constituting fraud or mistake'" as required by Federal Rule of Civil Procedure 9(b). *Dixon v. Allergan USA, Inc.*, No. 14-61091-CIV, 2015 WL 12915671, at *3 (S.D. Fla. May 28, 2015) (Scola, J.) (quoting Fed. R. Civ. P. 9(b)).

## ARGUMENT

### I. Plaintiff's Complaint Is a Shotgun Pleading that Violates Fed. R. Civ. P. 8.

#### A. Plaintiff's Complaint Fails to Direct Specific Allegations at Individual Defendants.

Plaintiff's claims are defective because each claim is pled in an impermissible shotgun-pleading manner. As this Court has explained, "courts in the Eleventh Circuit have little tolerance for shotgun pleadings . . . [because they] waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Kercher v. Carnival Corp.*, No. CV 19-21467-CIV, 2019 WL 1723565, at *1 (S.D. Fla. Apr. 18, 2019) (Scola, J.) (citation and quotations omitted). A complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" is an impermissible shotgun pleading. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (footnote omitted); *see also Affordable Aerial Photography, Inc. v. Modern Living Real Estate, LLC*, No. 19-CV-80488, 2019 WL 3716775, at *2 (S.D. Fla. Aug. 7, 2019) ("The failure to identify claims with sufficient clarity to enable the defendant[s] to frame a responsive pleading constitutes a 'shotgun pleading' that violates Rule 8(a)(2)) (citing *Byrne v. Nezhat*, 261 F.3d 1075, 1129-30 (11th Cir. 2001)).

Plaintiff's Complaint includes 125 paragraphs, but directs allegations specific to Sanofi in only eight, Compl. ¶¶ 3-8, 21, 23, and allegations specific to BIPI in only two, *id.* ¶¶ 9, 22—and

5

nearly all of those allegations relate to jurisdictional matters such as Defendants' states of incorporation. *Id.* ¶¶ 3-9. None of the allegations asserts that Sanofi or BIPI engaged in any specific conduct that would support the causes of action that Plaintiff pleads.

Rather, the Complaint collectively identifies Sanofi and BIPI as "Defendants," *id.* ¶ 11, and nearly every substantive allegation of the Complaint is made against all "Defendants," without making any effort to differentiate between Sanofi and BIPI or their alleged individual conduct, despite the fact that Sanofi and BIPI are distinct entities that distributed Zantac at different times. *See, e.g.*, *id.* ¶ 44 ("Defendants have had notice of serious health outcomes regarding cancer and other injuries associated with their ranitidine products . . . ."); *id.* ¶ 47 ("Defendants knew or should have known that Zantac exposed users to unsafe levels of the carcinogen NDMA based on the data available to them . . . ."); *id.* ¶ 48 ("Defendants took no action to inform Plaintiff, Plaintiff's physicians, and/or FDA of this known risk."); *id.* ¶¶ 49-52, 56, 60 (additional collective and vague factual allegations).

Missing from the Complaint here are any specific factual allegations as to what any particular defendant allegedly did wrong. As a result, the Complaint fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," *Weiland*, 792 F.3d at 1323, as Rule 8 requires. *See also Petrovic v. Princess Cruise Lines, Ltd.*, No. 12-21588 Civ., 2012 WL 3026368, at *5 (S.D. Fla. July 20, 2012) ("It is not for the court or the parties to speculate as to the identity of the Defendants these allegations are levied against as the burden rests on the plaintiff to provide fair notice of the grounds for the claims made against each of the defendants."). Accordingly, all causes of action in Plaintiff's shotgun Complaint should be dismissed. *See, e.g.*, *Kaufman v. Pfizer Pharm., Inc.*, No. 1:02-CV-22692, 2010 WL 9438673, at *3 (S.D. Fla. Nov. 23, 2010) (dismissing "impermissible shotgun pleading" that *inter alia*, made

6

"general allegations against defendants in each of the twelve counts but fail[ed] to distinguish between Pfizer and Wyeth and fail[ed] to explain the basis of Pfizer's liability," and failed to "allege specific facts about the duty each defendant owed to her . . . [or] how each defendant breached its duty and how the breach caused her injuries").[6]

Compounding Plaintiff's failure to plead facts specific to each Defendant, the Complaint brings causes of action collectively against all Defendants, again without making any effort to differentiate between each of the Sanofi defendants and BIPI or their alleged individual conduct, despite the fact that each of the Sanofi defendants and BIPI are distinct entities with different time periods of involvement with respect to the manufacture and distribution of Zantac. *See* Compl. ¶ 7 (alleging that the Sanofi defendants are the manufacturers and distributors of Zantac); *id.* ¶ 9 (alleging that BIPI manufactured and distributed the drug in the United States from about October 2006 to January 2017).

Finally, Plaintiff improperly incorporates by reference "all prior paragraphs of the Complaint" in support of each of his causes of action. *See id.* ¶¶ 59, 70, 84, 90, 100, 113. His

---

[6] *See also Diamond Resorts Int'l, Inc. v. US Consumer Attorneys, P.A.*, No. 18-80311-CIV, 2018 WL 6621363, at *3 (S.D. Fla. Oct. 26, 2018) ("Complaints that 'lump' multiple defendants together in a single cause of action fail to satisfy *Twombly*, *Iqbal*, and the Federal Rules of Civil Procedure because they lack the required specificity and plausibility to notify both the court and defendants of the claims asserted against them."); *id.* ("Courts within this district routinely dismiss complaints that 'lump' multiple defendants together."); *Joseph v. Bernstein*, No. 13-24355-CIV, 2014 WL 4101392, at *3 (S.D. Fla. Aug. 19, 2014), *aff'd*, 612 F. App'x 551 (11th Cir. 2015) ("When a complaint indiscriminately lumps all defendants together, it fails to comply with Rule 8."); *Steen Grp. LLC v. Ltd.*, No. 13-60070, 2013 WL 12089956, at *3 (S.D. Fla. June 5, 2013) (dismissing complaint that did "not clearly distinguish which Defendant is liable for which alleged breach or why," reasoning that a complaint "must be specific, putting each Defendant on notice and informing each Defendant as to under which capacity they are allegedly being held liable"); *Lane v. Capital Acquisitions & Mgmt. Co.*, No. 04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, the [plaintiff's] Complaint fails to satisfy the minimum standard of Rule 8." (citation omitted)).

pleading is a "typical shotgun complaint contain[ing] several counts, each one incorporating by reference the allegations of its predecessors." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). This leads "to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Id.*; *see also Cesnik v. Edgewood Baptiste Church*, 88 F.3d 902, 905 (11th Cir. 1996) (repeat incorporation by reference of all previous allegations for each cause of action was "in complete disregard of the principle that separate, discrete causes of action should be plead in separate counts."); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (similar). Courts routinely dismiss complaints suffering from such imprecise pleading. *See e.g.*, *Weiland*, 792 F.3d at 1324 ("[T]his Court has condemned the incorporation of preceding paragraphs where a complaint contains several counts, each one incorporating by reference the allegations of its predecessors [i.e., predecessor counts], leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions."); *see also Strategic Income Fund*, 305 F.3d at 1295; *Kaufman*, 2010 WL 9438673, at *3. The Court should follow suit here.

> **B.  The Negligence Cause of Action Should Separately Be Dismissed for Failing to Articulate a Specific Legal Theory.**

Plaintiff's negligence claim is an impermissible shotgun pleading for another reason: the Complaint fails to specify what theory of negligence Plaintiff is pursuing or to tie his factual allegations to any such theory. Not surprisingly, given the prematurity of this lawsuit, Plaintiff lacks the scientific foundation to plead what he believes is wrong with the drug. Instead, the negligence cause of action alleges a laundry list of conclusory theories of liability in a single negligence claim. Compl. ¶¶ 85, 87. Courts routinely hold this type of "omnibus" negligence claim to be impermissible shotgun pleading because "[e]ach theory is a separate cause of action that must be asserted independently and with supporting factual allegations." *Kercher*, 2019 WL

8

1723565, at *1. Plaintiff's failure to articulate a clear legal theory and the factual allegations that support it accordingly dooms his negligence claim. *Id.* at *1 (striking a complaint that alleged, in a single count for "negligence," at least nine ways in which the defendant allegedly breached a duty of care or was otherwise "negligent").

## II. Plaintiff's Negligent Misrepresentation Claim Fails to Meet Rule 9(b)'s Heightened Pleading Standard.

Negligent misrepresentation claims sounds in fraud, and therefore must satisfy Rule 9(b)'s heightened pleading standard. *Pruco Life Ins. Co. v. Brasner*, No. 10–80804–CIV, 2011 WL 2669651, at *4, (S.D. Fla. July 7, 2011) (holding that Rule 9(b)'s requirements govern negligent misrepresentation claims in Florida because such claims "sound in fraud rather than negligence" (quoting *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993)). For two reasons, Plaintiff's negligent misrepresentation claim here fails to meet that standard.

*First*, Plaintiff's boilerplate allegations fail to allege fraud with sufficient particularity. "Under Rule 9(b), 'a party must state with particularity the circumstances constituting fraud or mistake,' although 'conditions of a person's mind,' such as malice, intent, and knowledge may be alleged generally." *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1297 (S.D. Fla. 2017) (quoting Fed. R. Civ. P. 9(b)). In particular, "[t]o comply with Rule 9(b), a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" *Cardenas v. Toyota Motor Corp.*, No. 18-22798-CIV, 2019 WL 4777891, at *2 (S.D. Fla. Sept. 30, 2019) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

Here, Plaintiff fails to allege the "'who, what, when, where, and how' pertaining to the underlying fraud." *Id.* (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir.

9

2006)). Plaintiff does not allege the precise statements, documents, misrepresentations, or omissions that the Sanofi defendants or BIPI purportedly made. He also has not alleged the time, place, and person responsible for Sanofi's or BIPI's statements; the content and manner in which Sanofi's or BIPI's statements supposedly misled Plaintiff; or what Sanofi or BIPI gained by the alleged fraud. *See id.*

For example, he does not allege whether he took Zantac by prescription, in which case the relevant question under the learned intermediary doctrine is what alleged misrepresentations were made to his doctor. *See, e.g.*, *Bailey v. Janssen Pharm., Inc.*, 288 F. App'x 597, 608-09 (11th Cir. 2008) ("Florida law applies the learned intermediary doctrine, whereby the duty to warn flows from the drug manufacturer to the physician, and not the ultimate consumer."). Nor does he allege reliance on particular advertising or product packaging; he does not even identify the specific dates he claims to have used the product. Given that rigorous evaluation and testing of the product is still under way, the Complaint also does not and cannot identify what information he claims was fraudulently omitted. In light of Plaintiff's failure to plead his negligent misrepresentation claim with sufficient particularity, this claim should be dismissed.

*Second*, Plaintiff's Complaint fails to make specific and separate allegations of fraud against Sanofi or BIPI. "When a fraud claim involves multiple defending parties, the claimant must make specific and separate allegations against each defendant." *Kaufman*, 2010 WL 9438673, at *7; *see also Jacobs v. Osmose, Inc.*, No. 01-944-CIV, 2002 WL 34241682, at *4 (S.D. Fla. Jan. 3, 2002) ("Where claims of fraud are asserted against multiple defendants, Rule 9(b) has been interpreted to require the plaintiff to differentiate the allegations and to inform each defendant separately of the allegations of its participation in the fraud." (citing *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)). "At bottom, the purpose of particularity

10

pleading is to alert defendants to their precise misconduct and protect them against baseless charges of fraudulent behavior." *Cardenas*, 2019 WL 4777891, at *2. Here, given Plaintiff's failure to make individual allegations regarding Sanofi or BIPI, *see supra* Part I.A, let alone specific and separate allegations of fraudulent conduct sufficient to satisfy Rule 9(b), Plaintiff's negligent misrepresentation claim should be dismissed.

### III. Plaintiff's Claims for Breach of Express and Implied Warranties Should Be Dismissed for Warranty-Specific Pleading Defects.

Plaintiff's claims for breaches of express and implied warranties should be dismissed for three additional reasons, and his request for punitive damages for the alleged breaches should be stricken.

*First*, Plaintiff's warranty claims should be dismissed because Plaintiff failed to provide Sanofi or BIPI with pre-suit notice as required by Florida law. Florida Statute Section 672.607 provides that "[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a). "This notice requirement is a valid precondition of imposing liability on a seller of goods for breach of warranty." *Hummel v. Tamko Bldg. Prod., Inc.*, 303 F. Supp. 3d 1288, 1298 (M.D. Fla. 2017) (citations and quotation marks omitted). Plaintiff's failure to provide Sanofi or BIPI with any pre-suit notice before filing this action warrants dismissal. *E.g.*, *Meyer v. Colavita USA Inc.*, No. 10-61781-CIV, 2011 WL 13216980, at *5 (S.D. Fla. Sept. 13, 2011).

*Second*, Plaintiff's warranty claims should be dismissed for lack of privity. "When Florida adopted the doctrine of strict liability for defective products it limited liability for breach of express or implied warranty to individuals in privity with the manufacturer." *Amron v. Glaxosmithkline Consumer Healthcare, L.P.*, No. 11-20068-CIV, 2011 WL 13223558, at *3 (S.D. Fla. June 15, 2011); *see also Kaufman*, 2010 WL 9438673, at *6 ("It is well-settled Florida law that an end user

11

cannot assert a claim for breach of implied or express warranty in the absence of contractual privity between the plaintiff and the manufacturer." (citing cases)). Because Plaintiff does not allege contractual privity with Sanofi or BIPI, his claims of breach of express and implied warranties should be dismissed.[7]

*Third*, Plaintiff's express warranty claim should also be dismissed given Plaintiff's failure to allege (1) an assertion of fact by Sanofi or BIPI of which Plaintiff was ignorant prior to purchasing Zantac, or (2) that Plaintiff justifiably relied on any such assertion. Such allegations are necessary for a breach of express warranty claim to lie. *See Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-24363-CIV, 2018 WL 4932871, at *7 (S.D. Fla. Apr. 23, 2018) ("[A]n express warranty is generally considered to arise only where the seller asserts a fact of which the buyer is ignorant prior to the beginning of the transaction and on which the buyer justifiably relies as part of the basis of the bargain." (quoting *Thursby v. Reynolds Metals Co.*, 466 So. 2d 245, 250 (Fla. 1st DCA 1984)). Here, just as with his negligent misrepresentation claim, *see* discussion *supra* at Part II, Plaintiff has not pleaded what statements any particular Defendant allegedly made to him on which he relies. Plaintiff's failure to plead these elements of an express warranty claim require dismissal of that claim.

*Finally*, aside from the deficiencies of the breach of warranty claims, Plaintiff impermissibly seeks punitive damages for these causes of action. *See* Compl. ¶¶ 99, 112. As punitive damages are not recoverable for breach of warranty claims, these requests should be

---

[7] *See, e.g.*, *Amron*, 2011 WL 13223558, at *3 (dismissing breach of express and implied warranty claims for lack of privity); *Kaufman*, 2010 WL 9438673, at *7 ("Plaintiff concedes at the status conference that she did not purchase the drugs at issue directly from Defendant. In fact, she alleges that her doctor prescribed her the drugs. Thus, Plaintiff cannot demonstrate privity of contract. District Courts routinely dismiss breach of warranty claims at the motion to dismiss stage, even in the absence of an admission.").

12

dismissed. *See, e.g.*, *Carter v. Killingsworth*, 477 F. App'x 647, 648 (11th Cir. 2012) ("Under Florida law, punitive damages are not recoverable for a . . . breach-of-warranty claim."); *Royal Typewriter Co., a Div. of Litton Bus. Sys. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1106 (11th Cir. 1983) (similar).

### IV. Plaintiff's Request for Attorneys' Fees Should Be Dismissed.

Plaintiff's Complaint seeks an award of attorneys' fees with respect to his strict liability design defect claim. *See* Compl. ¶ 69. But "[p]revailing parties in litigation may only receive attorneys['] fees when authorized by statute or a term in a contract." *Agudelo v. Padron*, No. 18-22612-CIV, 2019 WL 1331900, at *5 (S.D. Fla. Mar. 25, 2019) (Scola, J.) (quoting *Kallas v. Carnival Corp.*, 2008 WL 111064 (S.D. Fla. Jan. 8, 2018)). Here, there is no basis in statute or contract to award attorneys' fees for any of Plaintiff's claims. Therefore, Plaintiff's request for attorneys' fees should be dismissed.

### CONCLUSION

Based on the foregoing, the Court should dismiss Plaintiff's Complaint.

Dated: November 7, 2019  Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Christopher Oprison*
Christopher Oprison, Esq.
Florida Bar No. 0122080
200 South Biscayne Boulevard
Suite 2500
Miami, Florida 33131
Tel.: (305) 423-8522
Fax: (305) 675-6366
chris.oprison@dlapiper.com
monica.tucker@dlapiper.com

**ARNOLD & PORTER**
 **KAYE SCHOLER LLP**

Anand Agneshwar*
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
Fax: (212) 836-8689
anand.agneshwar@arnoldporter.com

Daniel S. Pariser*
Paige H. Sharpe*
Elliott C. Mogul*
601 Massachusetts Avenue, NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
daniel.pariser@arnoldporter.com
paige.sharpe@arnoldporter.com
elliott.mogul@arnoldporter.com

* *pro hac vice* applications forthcoming

*Attorneys for Defendants Sanofi US Services Inc., Sanofi-Aventis U.S. LLC, and Chattem, Inc.*

**WICKER SMITH O'HARA MCCOY & FORD, P.A.**

*/s/ Jordan S. Cohen*
Jordan S. Cohen, Esquire
Florida Bar No. 551872
Jcohen@wickersmith.com
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400
Ft. Lauderdale, FL 33301
Phone: (954) 847-4800
Fax: (954) 760-9353

*Counsel for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 7, 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and that it is being served this date on all counsel of record via transmission of Notices of Electronic Filing generated by the CM/ECF system.

*/s/ Christopher Oprison*
Christopher Oprison, Esq.
Florida Bar No. 0122080

EAST\170192666.2